MATHEWS, Justice
(concurring specially) .
The appellant insists that the case of State v. Volusia County Bldg. Authority, Fla., 60 So.2d 761, is controlling 'in this case. There is no similarity between that case and the case at bar. The Volusia County School Bldg. Authority was not a going concern; it had no duties to perform which would make it necessary or advisable' that it use or employ school children in Volusia County as a means of performing some other statutory duty imposed upon it. It appears that its sole purpose, function, power and authority was to construct and enlarge school buildings in the county and to .issue bonds for that purpose. It was then authorized to lease or rent its buildings for a period and for a consideration to be, agreed upon by such authority with the Board of Public Instruction of the County and then use the amount to be paid by. the Board of Public Instruction for the debt service of the authority. We have no such case before us now.
■ The Board of Control has been in existence for more than fifty ' years. It is not a part' of the free public school system of the state and the acts now under consideration do not in any manner make the Board of Control, or its activities, a part of the free public school system of the state. ■ It has a duty to perform in the field of higher education. At the time of the enactment of Chapter 27680 Special Acts of 1951 and Chapter 26859, the Board of Control was operating at the University of Florida and Florida State University [formerly Florida State College for Women]. From the very beginning one of the primary aims and objectives of the Board of Control through the instrumentality of the Florida State College for Women, now Florida State University, hereafter referred to as Florida State University, was to prepare and train' teachers in the field of higher education who would fill the needs of the Florida Free Public School System- by furnishing adequately trained teachers.
It has long been recognized by the Board of Control that the best method of training teachers at Florida State University was to have sufficient children who were eligible to enter free public school as subjects for the training of teachers.
Leon County has the duty and responsibility of providing a. public school system to train and educate the children of the county who are eligible for entry into the free public schools.
The record shows that for many years the Board of Control, through Florida State University,, has furnished a building of some kind for the primary purpose of training the students attending the institution at Tallahassee for teachers, and for the secondary purpose , of housing pupils from Leon County who were eligible to enter the free public school system of Leon County. Throughout the .years the system has worked to the mutual advantage of two *474 governmental units: (1) to Florida State University in providing capital equipment in which the students at the University could work; and (2) a house, or building, where some of the children of Leon County, eligible for entry in the free public school system of Leon County, could be trained and educated by teachers furnished by Florida State University to the same extent as if they were attending the free public schools of Leon County.
There is no constitutional prohibition against the Board of Control erecting such a building. It cannot carry on the powers, duties and functions placed upon it by law without a building.
There is no constitutional prohibition against the Board of Public Instruction of Leon County entering into an arrangement or agreement with another existing governmental board, the Board of Control, for the housing, teaching, training and educating a part of the pupils of Leon County, eligible for entry into the free public school system of the county, as authorized by the legislative acts in question.
Every dollar received from the State by the County for the support, operation and maintenance of the public school system of the county is received from excise taxes or from interest on the sacred state school fund. No part of such money is raised by direct or indirect ad valorem taxes. There is no constitutional prohibition against the use of such money by paying a portion thereof, not otherwise needed, to the Board of Control as authorized by the Act in question.
The County Board, for the services to bé rendered to it by the Board of Control, agreed to pay from “current revenues and any other available funds” $141 per pupil per year based on the average daily attendance at the project, but not less than $60,000 nor more than $105,000. From the finding and declarations of the Legislature and from the terms ■ of the contract and from evidence adduced before the Chancellor at the time he entered a validating decree, it appeared that the number of school pupil's in Léon County who would attend the institution provided for by the Board of Control would be more than sufficient to require a payment in excess of $60,000 per year at a rate equal to $141 per pupil.
If there was any doubt that Leon County, directly or indirectly, could ever be required to levy an ad valorem tax in order to carry out its agreement with the Board of Control, such doubt is entirely eliminated by the provisions of the Act in question, the validation decree of the Circuit Court and by the stipulations inserted in the certificates as shown by this record. The certificates themselves contain the following provision:
“This certificate shall not be deemed to constitute a debt of the State of Florida but shall be payable solely from the special fund hereinafter mentioned.”
It is insisted, however, that the contract between the Board of Control and the Board of Public Instruction of Leon County amounts to the creation of a debt of the county, as distinguished from the State, without an election, in violation of amended Section 6 of Article 9 of the State Constitution. It is admitted that the duty of maintaining the public school system of Leon County is a proper expense to be paid from current funds from year to year. The appellee contends that when a contract is entered into extending over a period of years, the same amounts to a debt. In the case of State v. City of Miami, 150 Fla. 270, 7 So.2d 146, this Court upheld an agreement whereby Dade County obligated itself to pay the City of Miami an annual rental with reference to a municipal hospital and such annual rental was used by the city for debt service, extending over a period of years.
The validating decree, which is a part of each certificate to be issued, contains the following:
“14a. No ad valorem tax shall be used or applied to the satisfaction of the obligation of the County Board under its contract with the Board of Control.”
*475 It is, therefore, apparent that the contract entered into by the Board of Control and the Board of Public Instruction of Leon County, Florida, and the certificates of'1 indebtedness to be issued, pursuant thereto, do not violate amended section 6 of Article 9 of the State Constitution.
ROBERTS, C. J., and THOMAS, SE-BRING and HOBSON, JJ., concur.